**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

NANCY M.,

        Plaintiff,

v.

COMMISSIONER OF THE SOCIAL
SECURITY ADMINISTRATION,

        Defendant.

Civil Action No. 21-12813 (MAS)

**MEMORANDUM OPINION**

**SHIPP, District Judge**

    This matter comes before the Court on Plaintiff Nancy M.'s ("Plaintiff")[1] appeal from the Commissioner of the Social Security Administration's (the "Commissioner") final decision, which determined that Plaintiff was not disabled under the Social Security Act through March 8, 2019. (ECF No. 1.) The Court has jurisdiction to review this appeal under 42 U.S.C. § 405(g) and reaches its decision without oral argument under Local Civil Rule 78.1. For the reasons below, the Court affirms the Commissioner's decision.

**I.    BACKGROUND**

    In this appeal, the Court must answer three questions: (1) whether substantial evidence supports the Administrative Law Judge's (the "ALJ") step-three determination concerning Plaintiff's physical and mental impairments; (2) whether the ALJ erred in calculating Plaintiff's

---

[1] The Court identifies Plaintiff by first name and last initial only. *See* D.N.J. Standing Order 2021-10.

residual functional capacity ("RFC"); and (3) whether substantial evidence supports the ALJ's step-five determination that Plaintiff was capable of alternative work during the relevant period. Baked within these alleged errors, Plaintiff's arguments are aimed at whether the ALJ erred when deciding how Plaintiff's obesity impairment affected her RFC, if the ALJ erred in determining some of Plaintiff's mental impairments were "mild" rather than "marked," and whether the ALJ erred in failing to consider certain findings from non-treating Medical Expert Dr. Gerald P. Koocher ("Dr. Koocher"). The Court begins with brief background of the procedural posture and the decision by the ALJ.[2]

### A. Procedural Posture

The events underlying this matter began in April 2015, when Plaintiff filed for disability benefits alleging a November 1, 2014 onset date. (AR 153, 176, 545.) Plaintiff's alleged impairments included panic disorder, anxiety, depression, and hypothyroidism. (*Id.* at 551.) The State Agency denied Plaintiff's claim, after which Plaintiff requested a hearing before an administrative law judge. (*Id.* at 66-93, 105.) The administrative law judge held a hearing in March 2018 and issued a decision finding that Plaintiff was not disabled. (*Id.* at 10-65.) The Appeals Council found no reason to disturb that decision. (*Id.* at 2-7.) Plaintiff then appealed to this Court, but shortly after, the parties stipulated to remand the case back to the administrative agency because of a change in the law. The Court agreed and remanded the matter. *See Nancy M. v. Comm'r of Soc. Sec.*, No. 19-12284 (June 22, 2020), ECF No. 13.

On remand, Plaintiff's claim was referred to a different administrative law judge (hereafter, the "ALJ"), who heard the case in January 2021. (AR 569-613.) While the old case was pending,

---

[2] The Administrative Record ("Record" or "AR") is available at ECF No. 7 through 7-17. The Court will reference the relevant page numbers in the Record and will not reference corresponding ECF page numbers within those files.

Plaintiff filed a new application on May 9, 2019, alleging disability as of May 30, 2018. (Pl.'s Moving Br. 5, ECF No. 12.) Two months later, the State Agency found that Plaintiff was disabled as of March 9, 2019, based on the conclusion that Plaintiff suffered from a depressive disorder under § 12.04 of the Listings of Impairments (the "Listings") and an anxiety disorder under § 12.06 of the Listings. (AR 653-666.)

But the story does not end there because, although Plaintiff's second application was approved as of March 2019, her prior request for benefits as of 2014 remained pending. In April 2021, the ALJ, in a written opinion, determined that Plaintiff was not disabled from November 1, 2014 to March 8, 2019, but did not disturb the finding that Plaintiff was disabled as of March 9, 2019. (AR 562.) The Appeals Council took no action to further review the decision by June 14, 2021, and Plaintiff filed the instant appeal. (ECF No. 1.) Plaintiff filed her opening brief on December 18, 2021 (ECF No. 12), and the Commissioner filed her opposition brief on January 26, 2022 (ECF No. 13). Plaintiff replied on January 28, 2022. (ECF No. 14.)

**B.     The ALJ's Decision**

In her April 2021 opinion, the ALJ concluded that Plaintiff was not disabled under the prevailing Administration regulations from November 1, 2014 to March 8, 2019. (*See generally* AR 541-68.) The ALJ did not disturb the State Agency's determination that Plaintiff was disabled as of March 2019. (*Id.*) As noted above, the ALJ's written decision examined Plaintiff's disability claim from 2014 to 2019. Through that limited lens, the ALJ set forth the five-step process for determining whether an individual is disabled according to 20 C.F.R. § 404.1520(a) *et seq*. (*Id.* at 545-47.) At step one, the ALJ found that Plaintiff had not "engaged in substantial gainful activity" since the alleged disability onset date. (AR 547 (citing 20 C.F.R. § 404.1571).) At step two, the ALJ found that Plaintiff suffered from several severe impairments including anxiety, depression, and obesity. (AR 547-48 (citing 20 C.F.R. § 404.1520(c)).) At step three, the ALJ determined that

3

Plaintiff did not meet or medically equal the requirements for presumptive disability under Listings 12.04 or 12.06. (AR 548-50 (citing 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526).) Before proceeding to step four, the ALJ concluded that Plaintiff had the RFC to perform work at all exertional levels with the following non-exertional limitations: Plaintiff should avoid all exposure to hazards such as unprotected heights and moving mechanical parts but otherwise could (i) tolerate few if any changes in the work setting, tools, and work processes; (ii) perform no assembly line or production rate pace work; and (iii) tolerate occasional interaction with coworkers, supervisors, and the public with no constant interaction with the public in a customer service setting. (AR 550-59 (citing 20 C.F.R. §§ 404.1529, 404.1527).) At step four, the ALJ concluded that Plaintiff could not return to her past work as a home attendant. (AR 560 (citing 20 C.F.R. § 404.1565).) Finally, at step five, the ALJ concluded that "there are jobs that exist in significant numbers in the national economy" that Plaintiff could perform. (AR 560-61 (citing 20 C.F.R. §§ 404.1569, 404.1569(a)).)

This appeal concerns the ALJ's analysis at steps three and five, as well as the ALJ's RFC determination. Starting with step three, the ALJ considered evidence of Plaintiff's mental impairments but concluded that they did not meet the criteria in Listings 12.04 and 12.06. (AR 548.) Specifically, the ALJ assessed whether Plaintiff's mental impairments satisfied one extreme limitation or two marked limitations in the following "Paragraph B" criteria: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. (*Id.* at 548-50; *see also* 20 C.F.R., pt. 404, subpt. P, app. 1, §§ 12.04, 12.06). Regarding the first set of factors, the ALJ concluded that Plaintiff had a mild limitation, emphasizing that Plaintiff could recall words in succession notwithstanding her complaints of memory deficits. (AR 548.) Regarding the second criterion, the

4

ALJ found that Plaintiff had a moderate limitation because she had normal interaction capabilities and was cooperative with her medical treatment providers. (*Id.* at 548-49.) For the third criterion, the ALJ considered Plaintiff's complaints of difficulty concentrating and completing tasks but found she had only a moderate limitation considering her temperament and cooperation. (*Id.* at 549.) Finally, regarding the last criterion, the ALJ again found a moderate limitation, concluding that Plaintiff was not agitated, unmanageable or disruptive. (*Id.* at 549-50.) The ALJ also concluded that the evidence failed to establish "Paragraph C" criteria. (*Id.* at 550.)

Turning next to the RFC determination, the ALJ found that Plaintiff had the RFC "to perform a full range of work at all exertional levels" with a few non-exertional limitations. (*Id.* at 550.) As part of that finding, the ALJ found Plaintiff's subjective complaints about her limitations were not consistent with the medical record. (*Id.* at 555.) Specifically, Plaintiff claimed that she could not work in any environment without a companion—someone she knew and trusted. (*Id.* at 554-56.) In addition, while the ALJ considered obesity in evaluating the RFC, she concluded that Plaintiff's physical and neurological examinations were normal. (*Id.* at 551, 555.)

In considering the mental impairments, the ALJ examined various records including the State Agency consultants' opinions, statements from Plaintiff's husband and daughter, the medical opinions of Doctor Alexander Iofin ("Dr. Iofin") and Doctor Kristen Clark ("Dr. Clark"), Noreen Taggart's report, Plaintiff's Global Assessment of Functioning ("GAF") scores, and the opinions of Doctors Laura Tavarez and Matthew Way. (*Id.* at 556-59.) As part of this comprehensive assessment, the ALJ afforded significant weight to Dr. Koocher's finding of the applicable mental diagnosis, and some weight to his assessment that Plaintiff did not meet the Listings' requirements. (*Id.* at 556-57.) But the ALJ disagreed with Dr. Koocher's opinion that Plaintiff could not work without a trusted companion. (*Id.*) The ALJ reached this conclusion based on the lack of supporting

5

medical evidence and contrary opinions of other treating providers. (*Id.* at 556.) The ALJ did not find the State Agency consultant's disability determination persuasive for the period prior to March 9, 2019 but did not disturb the finding for after that date. (*Id.* at 559.)

At the fifth step, the ALJ determined that jobs exist in significant numbers in the national economy that Plaintiff can perform. (*Id.* at 560.) The ALJ reached this conclusion based in part on the testimony of Warren Maxim ("Maxim"), a vocation expert who testified that Plaintiff could work as a vehicle cleaner, salvage laborer, or cleaner. (*Id.* at 561, 607.) The ALJ determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles ("DOT"). (*Id.* at 561.)

## II. LEGAL STANDARD

### A. Standard of Review

On appeal from the final decision of the Commissioner, a district court "shall have power to enter, upon the pleadings and transcript of the Record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g); *Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir. 2001). To survive judicial review, the Commissioner's decision must be supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Morales v. Apfel*, 225 F.3d 310, 316 (3d Cir. 2000). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (citing *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Substantial evidence "'may be somewhat less than a preponderance' of the evidence." *Ginsburg v. Richardson*, 436 F.2d 1146, 1148 (3d Cir. 1971) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)).

In reviewing the Record for substantial evidence, the court "may not weigh the evidence or substitute [its own] conclusions for those of the fact-finder." *Rutherford v. Barnhart*, 399 F.3d

6

546, 552 (3d Cir. 2005) (internal quotation marks omitted). Even if the court would have decided differently, it is bound by the ALJ's decision if it is supported by substantial evidence. *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)). Judicial review of an ALJ's decision requires a qualitative review that considers each piece of evidence in relation to the entire record. *Kent v. Schweiker*, 710 F.2d 110,114 (3d Cir. 1983). Finally, "[s]ince it is apparent that the ALJ cannot reject evidence for no reason or for the wrong reason, an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper." *Cotter v. Harris*, 642 F.2d 700, 706-07 (3d Cir. 1981) (citation omitted).

  **B.**  **Establishing Disability Insurance Benefits Eligibility**

  To be eligible for disability insurance benefits, claimants must be unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). Under the statute, claimants are disabled only if their physical or mental impairments are "of such severity that [they are] not only unable to do [their] previous work but cannot, considering [their] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A). A physical or mental impairment is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 423(d)(3).

  Administration regulations provide a five-step evaluation procedure to determine whether an individual is disabled. *See* 20 C.F.R. § 416.920. For the first step, claimants must establish that they have not engaged in any substantial gainful activity since the onset of their alleged disabilities. *Id.* § 416.920(a)(4)(i). For the second step, claimants must establish that they suffer

7

from a "severe . . . impairment" or "combination of impairments." *Id.* § 416.920(a)(4)(ii). Claimants bear the burden of establishing the first two requirements, and failure to satisfy either one results in a denial of benefits. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). The third step requires that claimants provide evidence that their impairments are equal to at least one of the impairments listed in Appendix 1 of the regulations. 20 C.F.R. § 416.920(a)(4)(iii). If claimants demonstrate that they suffer from a listed impairment or that their severe impairment is equal to a listed impairment, they are presumed to be disabled and entitled to disability insurance benefits. *Id.* If they cannot so demonstrate, the eligibility analysis proceeds to step four. The fourth step of the analysis requires the ALJ to determine whether claimants' RFC permits them to resume previous employment. *Id.* § 416.920(a)(4)(iv). If claimants' RFC permits previous employment, claimants are not "disabled" and not entitled to disability insurance benefits. *Id.* § 416.920(f). The burden of persuasion rests with claimants in the first four steps. *Malloy v. Comm'r of Soc. Sec.*, 306 F. App'x 761, 763 (3d Cir. 2009). At step five, the burden shifts to the Commissioner to demonstrate that claimants can perform other work consistent with their medical impairments, age, education, past work experience, and RFC. *Id.* If the Commissioner cannot satisfy this burden, claimants will receive disability insurance benefits. 20 C.F.R. § 416.920(g).

## III.    DISCUSSION

Plaintiff appeals the ALJ's determination that she was not disabled from November 1, 2014, through March 8, 2019. (*See generally* Pl.'s Moving Br.) In doing so, Plaintiff attacks the ALJ's written decision at steps three and five and challenges the RFC determination. The Court considers each issue on appeal in turn.

### A.    The ALJ's Step Three Determination is Supported by Substantial Evidence.

Plaintiff avers that the ALJ's first error in the sequential process occurred at step three, when the ALJ concluded that Plaintiff's anxiety was "mild" rather than "marked." (*Id.* at 23-25.)

8

As support, Plaintiff points to findings by Dr. Koocher, a non-examining medical provider, who determined Plaintiff's anxiety would result in a marked limitation impacting her ability to adapt or manage herself in a work setting. (*Id.* at 24.) The ALJ erred, Plaintiff stresses, because she incorrectly found that Dr. Koocher's findings were unsupported by the objective medical evidence and, further, erroneously believed that Dr. Koocher relied solely on Plaintiff's subjective complaints. (*Id.* at 25 (citing AR 556).) The Commissioner counters that the medical records contradicted Dr. Koocher's findings on which Plaintiff relies. (Def.'s Opp'n Br. 5-6, ECF No. 13.) In any event, the Commissioner argues that substantial evidence supports the ALJ's determination at step three. (*Id.*) Because each step of the sequential process impacts subsequent steps, Plaintiff challenges the resulting impact of the ALJ's step-three determination at each subsequent step.

In reaching a decision on whether a plaintiff's condition meets a particular listing, it is not the Court's role to re-weigh the evidence, either against or in favor of the plaintiff, or "impose [its] own factual determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011). Instead, the question is whether substantial evidence supports the ALJ's decision. *Jennifer L. v. Comm'r of Soc. Sec.*, No. 20-8537, 2022 WL 494110, at *3 (D.N.J. Feb. 17, 2022) (citing *Schmidt v. Comm'r of Soc. Sec.*, No. 16-1924, 2017 WL 4948065, at *1 (D.N.J. Nov. 1, 2017)). To be clear, the ALJ agreed with several of Dr. Koocher's findings. (*E.g.*, AR 556 ("The [ALJ] accorded significant weight to Dr. Koocher's finding of the applicable mental diagnosis, as he had the opportunity to review the entire record.").) Plaintiff therefore takes issue with only the parts of Dr. Koocher's analyses that the ALJ rejected. Specifically, whether the ALJ erred in finding that the objective medical record undermined Dr. Koocher's findings as to whether Plaintiff required a trusted companion at work. (Pl.'s Moving Br. 24-25.)

9

The Court finds no error. The ALJ reasoned that, "to the extent Dr. Koocher's opinion suggests [Plaintiff] would require such assistance [of a companion], his opinion was inconsistent with the opinions of [Plaintiff's] treating providers." (AR 556, 833-976.) With an adequate explanation, an ALJ may reject a physician's opinion if contradictory medical evidence exists. *See Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999). Here, the ALJ found persuasive Plaintiff's treating providers, "who reported [that Plaintiff's] mental impairments would not preclude fostering children or work activity and did not disclose any need for such additional assistance." (AR 556 (citing Ex. 17F).) Going further, the ALJ noted that Plaintiff's medical providers found her friendly, cooperative, and responsive even without the presence of a companion. (*Id.* at 550, 525.) While taking her medication, Plaintiff was "stable." (*Id.* at 559 (citing Ex. 17F).) In addition, Plaintiff suffered from anxiety and depression since she was a child but still managed to maintain steady employment for over a decade, as the ALJ highlighted. (*E.g.*, AR 57-58.) And in responding directly to Plaintiff's subjective complaints, the ALJ cited medical evidence that consulting examiners diagnosed Plaintiff with not having agoraphobia.[3] (AR 555.) As is required by the Social Security regulations, the ALJ engaged in the factfinding process and determined that Dr. Koocher's opinion regarding Plaintiff's ability to function by herself was contradicted by the record. (AR 556 (citing AR 844, 850, 860, 868, 882, 910, 917, 921).) That is, the ALJ found Plaintiff's treating providers and the medical record more persuasive than that part of Dr.

---

[3] The U.S. Court of Appeals for the Third Circuit has defined agoraphobia as "an intense, irrational fear of open spaces, characterized by a marked fear of being alone or of being in public places where escape would be difficult and may be associated with panic attacks." *TheLosen v. Comm'r of Soc. Sec.*, 384 F. App'x 86, 90 n.4 (3d Cir. 2010) (citing *Dorland's Illustrated Med. Dictionary* at 40 (30th ed. 2003)).

10

Koocher's testimony.[4] Thus, the ALJ's determination relied on sufficient objective medical evidence.

Relatedly, Plaintiff urges the Court to reverse or remand the Commissioner's decision because the ALJ misread the record in finding that Dr. Koocher reached his companionship conclusion based solely on Plaintiff's self-reported complaints. (Pl.'s Moving Br. 25-26.) The ALJ's challenged statement is as follows,

> The remainder of Dr. Koocher's opinion was accorded no weight as *he relied exclusively on the claimant's self-reports of her functioning regarding her ability to work without the assistance of a trusted companion*, as Dr. Koocher did not support his opinions in that regard with any objective medical evidence by her treating providers.

(AR 556 (emphasis added).) Based on the medical record, Plaintiff is correct that Dr. Koocher's conclusion was premised on more than just Plaintiff's subjective complaints. But the ALJ's slight misstatement as to this fact falls short of warranting remand or reversal.

For one, the ALJ is correct that the primary evidence supporting Plaintiff's inability to travel without a companion stems from her subjective complaints (*e.g.*, AR 593-99 (Plaintiff's testimony as to bringing companions to work)) or her family members' subjective opinions (*e.g.*, *id.* at 549 (Plaintiff's husband's subjective opinions on Plaintiff's social limitations)). But this type of evidence is likewise non-medical subjective information. Moreover, Dr. Koocher cites to treating providers that parrot Plaintiff's subjective complaints about traveling without a companion

---

[4] The Social Security Administration considers applications for benefits as of the date it was received. *See* 20 C.F.R. § 416.325. For claims filed before March 27, 2017, such as Plaintiff's application, "'[a] cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.'" *Nathaniel H. v. Kijakazi*, No. 20-3598, 2021 WL 5413981, at *6 (D.N.J. Nov. 19, 2021) (quoting *Nazario v. Comm'r Soc. Sec.*, 794 F. App'x 204, 209 (3d Cir. 2019)).

rather than conducting independent assessments or adding their own observations of Plaintiff. (*E.g.*, 17F (as part of a June 2019 visit, Dr. Matthew Way reported as "[s]ubjective" information that Plaintiff reports finding it "difficult to leave her house" and "does not drive herself").) Because the underlying source of this information is still Plaintiff's grievances, it provides little added value for the ALJ. (*Compare* Ex. 11F (Dr. Kristen Clark reporting that Plaintiff reports a fear of crowds), *with* AR 680 (Plaintiff's testimony regarding crowds).) So although the ALJ was incorrect in stating that Dr. Koocher relied "exclusively" on the Plaintiff's self-reporting of her limitations regarding working without the assistance of a trusted companion, such an error is harmless.[5] (AR 556.)

In sum, even considering the subjective evidence, the ALJ indicated that Plaintiff's medical providers found her cooperative and functional during companionless examinations. (*Id.* at 550, 525 (citing AR 844, 850, 860, 868).) The ALJ further noted that when treating providers examined Plaintiff (without a companion), she was "not agitated, unmanageable, or disruptive," but rather "exhibited good eye contact, normal thought processes, normal thought content, and normal speech." (*Id.* at 549 (citing Exs. 2F, 4F, 6F, 13F).) Indeed, during the relevant period, Plaintiff periodically reported that her symptoms improved. (*Id.* 553 (citing Ex. 7F (Dr. Clark's October 2015 report that Plaintiff showed "improvement" in her symptoms and felt "less depressed")).) The Court, consequently, finds that "more than a mere scintilla" of evidence supports the ALJ's decision of a mild limitation. *See Anderson v. Saul*, No. 18-3625, 2020 WL 7237929, at *9 (D.N.J.

---

[5] An error is "harmless" when, despite the technical correctness of an appellant's legal contention, there is "no set of facts" upon which the appellant could recover. *Brown v. Astrue*, 649 F.3d 193, 196 (3d Cir. 2011) (quoting *Renchenski v. Williams*, 622 F.3d 315, 341 (3d Cir. 2010)); *Madera v. Comm'r of Soc. Sec.*, No. 14-3234, 2015 WL 1924587, at *2 (D.N.J. Apr. 27, 2015) ("Plaintiff . . . bears the burden, on appeal, of showing not merely that the Commissioner erred, but also that the error was harmful.").

Dec. 9, 2020) (affirming an ALJ's determination where the "ALJ detailed years of record evidence," including medical records).

## B. The ALJ's RFC Determination is Supported by Substantial Evidence.

Turning next to the ALJ's RFC determination, Plaintiff *first* repeats that the ALJ missed the mark in finding that Plaintiff could work without a companion and *second* argues that the ALJ ignored Plaintiff's obesity impairment in calculating her RFC, despite acknowledging it was "severe." (Pl.'s Moving Br. 17, 20-27.) The Commissioner counters that substantial evidence supports the ALJ's RFC determination. (Def.'s Opp'n Br. 4.) For starters, the Commissioner claims that the issue of obesity was not raised below and, even if it was, Plaintiff failed to demonstrate that her obesity caused her any functional limitations. (*Id.* at 4-5.) Second, the Commissioner argues that the ALJ properly rejected the notion that Plaintiff could not work without a companion. (*Id.* at 5.)

As to Plaintiff's argument on the need for a companion, the Court addressed and rejected it above. Moreover, during the ALJ's RFC calculation, the ALJ did consider Plaintiff's mental impairments in requiring an additional nonexertional limitation that Plaintiff "could tolerate occasional interaction with co-workers, supervisors and [the] public with no constant interaction with the public." (AR 550.) Thus, for the reasons detailed above, the Court finds that substantial evidence supports the ALJ's RFC determination.

Second, the Court must determine whether the ALJ erred in calculating Plaintiff's RFC in light of her severe obesity impairment. Plaintiff cries fowl that the ALJ did not further integrate her obesity into the RFC determination, regardless of whether it met the requirements of the Listings. (Pl.'s Moving Br. 21-22.) Plaintiff also accuses the ALJ of failing to impose any limitations or restrictions on Plaintiff's ability to work based on her obesity. (*Id.*) The Court disagrees on both fronts. Settled law instructs that obesity, by itself, does not create any duty on

13

the part of ALJs to assess limitations in the RFC absent a claimant affirmatively raising it. *Rutherford*, 399 F.3d at 553 ("[Plaintiff] never mentioned obesity as a condition that contributed to her inability to work, even when asked directly by the ALJ to describe her impairments. . . . [Plaintiff] has not specified how that factor would affect the five-step analysis undertaken by the ALJ."). It follows, then, that obesity by itself is not enough to require a remand. *Id.* Here, Plaintiff failed to argue that her obesity impairment gave way to any limitations before the ALJ. (*See* AR 569-613.) Indeed, Plaintiff posits through her counsel that "usual aches and pains" after age 55 are not "really all that material" and not "the reason [Plaintiff] can't work." (*Id.* at 611.) Accordingly, the ALJ was not required to assess purported limitations from unmentioned impairments.

In any event, the ALJ still considered Plaintiff's obesity. Indeed, the ALJ found that it "may . . . increase the severity or functional limitations of other impairments." (*Id.* at 548.) In addressing obesity, the ALJ assigned "significant weight" to the opinions of State Agency consultants that found "no severe physical impairments." (*Id.* at 547 (citing Exs. 1A, 3A).) But the ALJ still "accommodate[d] [Plaintiff's] obesity" by incorporating into her RFC that Plaintiff should "avoid[] all exposure to hazards such as unprotected heights and moving mechanical parts." (*Id.* at 547, 559.) So Plaintiff is wrong in arguing that, "in terms of physical activity alone, the [ALJ] found that [Plaintiff] had *no limitation* in her ability to perform work activity at any exertional level." (Pl.'s Moving Br. 21 (emphasis added).) Rather, in addressing Plaintiff's obesity, the ALJ relied on medical evidence in the record, including that Plaintiff could ambulate effectively without the use of assistive devices and reported no debilitating symptoms caused by obesity. (AR 548.) That is, the ALJ noted that Plaintiff's obesity did not cause physical impairments such as "shortness of breath [or] cardiovascular or musculoskeletal body system complications." (*Id.*) What's more, Plaintiff's "physical . . . examinations were normal." (*Id.* at

555.) In sum, although the ALJ did not have to consider Plaintiff's obesity because Plaintiff failed to raise it, the ALJ did so anyway and concluded that Plaintiff had only minimal limitations impacting her ability to work. The ALJ further "considered this obesity in evaluating [Plaintiff's] RFC," as described through the ALJ's written opinion. (*Id.* at 548.) The Court finds the ALJ's RFC determination is supported by substantial evidence.

### C. Substantial Evidence Supports the ALJ's Step-Five Determination.

Last, Plaintiff argues that the ALJ failed to incorporate the correct RFC determination into the hypothetical questions posed to vocational expert Maxim at Plaintiff's hearing. (Pl.'s Moving Br. 28.) Maxim testified that, if Dr. Koocher's assertion that Plaintiff requires a companion at work is to be credited, then there would be no jobs suitable for Plaintiff in the national market. (AR 609.) Therefore, Plaintiff contends, there are no suitable jobs in the market. *Burns v. Barnhart*, 312 F.3d 113, 122 (3d Cir. 2002).

During step five, a vocational expert's testimony may only be credited if the claimant's physical and mental limitations are accurately portrayed in the hypothetical questions asked by an ALJ. *See Daniel W. v. Kijakazi*, No. 21-27005, 2022 WL 1639009, at *5 (D.N.J. May 24, 2022) (citing *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984)). The hypothetical questions must incorporate and reflect all of a claimant's impairments that are found to be supported by the record. *Id.* If not, then the hypotheticals are flawed to the degree that the expert's answer cannot be viewed as substantial evidence. *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987). This is not to say that ALJs are required to submit to the vocational expert every impairment alleged by the claimant. *Rutherford*, 399 F.3d at 554. Instead, ALJs only need to submit those claims which they find credible. *Id*.

Here, the ALJ did not find Plaintiff's claim credible regarding her need for a trusted companion at work. And because the Court already rejected Plaintiff's foundational errors

15

regarding the ALJ's RFC determination, much ink need not be spilled on this issue. For the above reasons, substantial evidence supported the ALJ's decision to discredit part of Dr. Koocher's testimony. It follows, then, that the Court takes no issue with the ALJ's hypotheticals posed to Maxim regarding Plaintiff's RFC. *See Rutherford*, 399 F.3d at 555-56 (holding that an ALJ was entitled to rely on a vocational expert's responses to hypotheticals when the hypotheticals posed incorporated the plaintiff's RFC).

In a last-ditch effort, Plaintiff also argues that the ALJ should consider her age, obesity, and hip pains when considering step five. (Pl.'s Moving Br. 30.) But the ALJ considered Plaintiff's "age, education, work experience, and RFC" at step five and applied those factors to the Medical-Vocational Guidelines, 20 CFR Part 404, Subpart P, Appendix 2.[6] (AR 561.) As to hip pain, Plaintiff did not raise this issue below and the Court will not impose an expansive and searching duty on the ALJ to guess at all potential impairments. (*See generally* AR 569-613.) Particularly so here, where Plaintiff stated that her "usual aches and pains" are not "really all that material." (*Id.* at 611.) The Court finds that the ALJ's step-five decision is supported by substantial evidence.

## IV.    CONCLUSION

Having reviewed the Record as a whole, the Court affirms the affirmance of the ALJ's decision by the Administration's Appeals Council. The Court will issue an order consistent with this Memorandum Opinion.

MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE

---

[6] Plaintiff also argues that the ALJ erred by concluding that Plaintiff is suitable for medium work, which "involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." (Pl.'s Moving Br. 29-30 (quoting C.F.R. § 404.1567 (c)).) The Court finds this argument unsound based on the record, which indicates that Plaintiff frequently carried 25 pounds or more, and that her past work involved lifting an adult body. (*E.g.*, AR 178, 183, 592.)

16